HEARD NOVEMBER TERM, 1876.

## *In Re* CORBIN.

Where, to a rule against an attorney of the Court to show cause why he should not be attached for contempt in counseling and advising his clients as to certain matters, deceiving the Court, and addressing it in a rude and discourteous manner, the return denied every material allegation of the suggestion, and no action was taken thereon: *Held*, That the return must be taken as true and the rule dismissed.

This was a suggestion to the Supreme Court in the case of the State, *ex relatione* R. M. Sims and others, *vs.* H. E. Hayne. It was filed December 2d, 1876, and is as follows:

And now come the relators into Court and give the Court to know and understand:

That David T. Corbin, an attorney and counselor at law of this Court, has been guilty of sundry contempts of this Court, to wit:

1. By aiding and abetting the respondents, his clients, to commit the contempts of this Court already passed upon by this Court, by his counsel and advice as attorney. This on the 22d of November, 1876, and on divers days thereto preceding.

2. By counseling and advising the respondents, his clients, to do and commit the acts and proceedings by them done on the 22d November, 1876, to wit: making the declaration and statement of election and adjourning *sine die* pending the proceedings of this Court, to which they were parties, and after being served with the rule to show cause, answering and appearing by counsel, and also after the order of the Court had been made touching the members of the General Assembly of the State of South Carolina.

3. By willfully concealing from the Court such action or proposed action of the said respondents and his connection therewith, and continuing to appear in this Court as counsel for the respondents after counseling the said respondents to a course inconsistent with his duty to this Court as an officer thereof, the effect of which must inevitably be to defeat the judgment of this Court and put a contempt thereon.

4. By aiding and abetting the said respondents, as the Board of State Canvassers, to evade and avoid or attempt to evade and avoid the jurisdiction of this Court.

5. By filing and supporting by argument the return of H. E. Hayne, Secretary of State, to the rule issued against him, wherein is set up the contempts of this Court practiced by the Board of State Canvassers, as a justifiable and lawful proceeding.

6. By delaying (by asking for time) the proceedings of this Court when he had reason to believe that the contempt of this Court was about to be perpetrated, with a view to gain time in which the said contempt could be done and completed.

7. By deceiving this Court by the statement "that, in his opinion, the Board had fully complied with the order of the Court in the *mandamus* case."

8. By deceiving the Court by the statement "that the Board of State Canvassers were then employed in obeying the mandate of this Court, and would require time in which to do so," when he then knew that the said Board had, under his advice, determined not to obey the mandate of the Court in this: that they did not propose to issue certificates to members elect to the General Assembly who had received the highest number of votes for their respective offices (according to the statement filed in this Court by the departments) from the Counties of Edgefield and Laurens.

9. By stating in open Court that if it was the purpose and desire of this Court to put the respondents in jail he would have nothing more to say—this in a rude and discourteous manner.

Upon the above suggestion a rule was issued requiring the defendant, D. T. Corbin, to show cause why he should not be attached and otherwise punished for contempt of the Court; and to that rule he made a return as follows:

Now comes D. T. Corbin, attorney and counselor of this Court, and for return to the rule to show cause why he should not be attached and otherwise punished for contempt of this Court, as set forth in the said suggestion, says:

1. That this is a criminal proceeding against him as an attorney and counselor of this Court, and the same can only be prosecuted in the name of the State by the Attorney General of the State. That James Conner, who signs this pretended suggestion on information, is not by law authorized to sign, file or prosecute the same, being merely a private citizen of the State of South Carolina.

2. That the information (section one) is not sufficiently definite and certain, in that it does not "fully, fairly, plainly, substantially and formally describe" the offense charged, as required by Section 13, Article I, of the Constitution, and this respondent cannot, therefore, be required to answer the same. Section *one* of the informa-

tion charges a contempt committed "by aiding and abetting the respondents, his clients, to commit the contempts of this Court, already passed upon by this Court, by his counsel and advice as attorney; this on the 22d of November, 1876, and on divers days thereto preceding," and does not state who the "respondents," his clients, were "aided and abetted," what "contempts" they were "aided and abetted" in, nor what "counsel or advice" was given by the respondent.

The information should set out these particulars at least, viz.: Who were in contempt of this Court; what their contempt consisted of, and what advice was given said parties by the respondent which is alleged to have been given in contempt of this Court.

3. In section *two* of the information, contempt is charged against this respondent, committed by counseling and advising the respondents, his clients, to do and commit the acts and proceedings by them done and committed on the 22d of November, 1876, to wit: "Making the declaration and statement of election and adjourning *sine die* pending the proceeding in this Court, to which they were parties, and after being served with the rule to show cause, answering and appearing by counsel, and also after the order of the Court had been made touching the members of the General Assembly of the State of South Carolina."

As to the matters here charged as a contempt, this respondent says: That the same is too indefinite and uncertain for him to make answer unto. That the clients alleged to have been advised are not named, nor is the specific advice alleged to have been given set out. That it is impossible to tell whether the offense, in the mind of the prosecutor, consists in the advising the making of the "declaration and statement of election" as it was made, or in advising the "making of the declaration and statement of election and adjourning *sine die pending* the proceedings in this Court, to which they were parties," and after the order had been made touching members of the General Assembly, and hence this respondent does not know whether he is to answer and defend himself for advising the "making" of such "declaration and statement of the election" as was made, or for advice in making such "declaration and statement" *when* it was made.

But if this were certain, that he is to defend himself against the making of such "declaration and statement of the election" as was made, then the information is silent as to what particular "declara-

tion and statement of the election" is complained of, as the same is not set out, and neither is it in any manner referred to with certainty.  The declaration of the election of November 7, 1876, comprehended a large number of officers and the election of a large number of persons to fill the same, and this respondent cannot answer for his advice in reference to any particular part of it unless the same is specifically set out and charged to be a contempt of the Court.

If by the information it is meant to charge this respondent with contempt for advising the making the declaration and statement of election and *adjourning sine die, pending* the proceedings in this Court, being served with a rule to show cause, and *after* the order made touching members of the General Assembly, then this respondent says (while he protests against the generality of the language and the want of certainty in it):  That he did advise the Board of State Canvassers, or some one or more of them, that they had no power or authority to sit beyond the term of ten days to determine and declare the recent election of November 7, 1876, which ten days, exclusive of two Sundays, expired on Wednesday, November 22, 1876, but he did not know at what hour of said day they would or could complete their labors and adjourn.  That the advice was general that they could not sit beyond that day upon said election, according to the statute.  That such was his opinion then, and such it is now.  That the opinion was not given for the purpose of evading this Court or its orders, or enabling the Board of State Canvassers to do so, but because it was the plain statute law in the matter, and this Court had made no order, if indeed it could so do, to prolong the life of the Board.

As to when this advice was given, the time named in the information is not correct.

The attention of the Court was called specifically, on November 16, 1876, to the opinion entertained by this respondent that the Board of State Canvassers were limited to a period of ten days within which to perform their functions as a Board, and the Court was asked to instruct the Board as to the effect of pending proceedings upon their action, and to make an order authorizing them to proceed to perform merely ministerial functions and an order to restrain them in the exercise of judicial functions, (if such was intended by the proceedings in Court,) but the Court declined to make any such order or give any advice.

The Court was specially informed that the purpose of the proposed order was, if possible, to prevent the Statute of Limitations named from running against the Board. The Court at that time did not intimate that this view of the statute was erroneous, and neither did James Conner, Esq.; the prosecutor, then attorney for the opposing party, and present in Court. This respondent avers that this advice,—that the Board could sit "for a term not exceeding ten days,"—was given to one or more members of the Board as early as November 15, seven days before the final and last day, November 22, when the term would expire, and with no expectation or thought that there was or would be any matter or thing done in the cause to interfere with such adjournment, as the advice necessarily implied.

This respondent specifically denies that he gave any such advice, or even had an opportunity to give any such, or to withdraw or change such advice, as before given, about the limitation of the term of the Board on November 22, 1876, "after the order of the Court had been made touching the members of the General Assembly of South Carolina."

This respondent and his associate were in Court on November 22, 1876, in the forenoon, when the Court read its opinion and directed a peremptory writ of *mandamus* against the Board to issue, and remained there waiting to inspect the order to be made, and while there, and just as the Court adjourned for the day, heard that the Board of State Canvassers had completed their labors and adjourned *sine die*.

This respondent admits that he expected the Board to adjourn some time that day or evening, but that they would adjourn before that writ of *mandamus* ordered was served upon them he did not and could not know. It subsequently appeared that said Board completed their labors and adjourned that day at twelve o'clock and forty-eight minutes, and that they did so, as this respondent is informed and believes, without any knowledge, directly or indirectly, that this Court had ordered a peremptory writ of *mandamus* to be issued against them. It was not served upon any of them till late in the night of that day, and on some of them the next day, as the return of the Sheriff shows.

4. As the contempt charged in the third section of the information in "willfully concealing from the Court such action or proposed action of the said respondents (Board of State Canvassers)

and his connection therewith, and continuing to appear in Court as counsel after counseling the said respondents (Board of State Canvassers) to adjourn," etc., " the effect of which must be to defeat the judgment of this Court and put contempt thereon," this respondent says that he did not conceal from this Court any advice given any of the Board in reference to the term of their existence, but called the attention of the Court and counsel on the other side, six days before the adjournment, to this opinion of his and to the statute.

That he denies absolutely any concealment in the matter. The Court and counsel on the other side knew, if they remembered the fact, plainly stated in open Court, that the Board were advised that they "had power to adjourn from day to day for a term not exceeding ten days," and that the sittings of the Board commenced on the 10th of November, and must, therefore, end in ten days thereafter, as there was no longer power " to adjourn from day to day." That this respondent appeared in Court representing the Board up to the 22d day of November, 1871, the very last day they could, by the most liberal construction of excluding two Sundays, sit and perform their duties. This respondent submits that it was the duty of the relators' counsel to have taken notice of the running of the statute, and, if possible and desirable, to have provided against it; that it was not the advice of this respondent that induced the adjournment of the Board on November 22d, 1876, but the terms of the statute which compelled it; that if the judgment of this Court was defeated by said adjournment, then it was the relators' fault not to have brought their case to judgment before the time by law ran out when it could have been of any value to them. This respondent denies any concealment or purpose to mislead the Court in the matter, or any intention to treat the Court with contempt, or any contempt of the Court in fact.

5. The offense charged in the fourth section of the information is answered by reference to the two preceding paragraphs of this answer.

6. As to the alleged contempt set up in section five of the information by filing and supporting by argument the return of H. E. Hayne, Secretary of State, to the rule issued against him, wherein he sets up the contempt of this Court practiced by the Board of State Canvassers as " a justifiable and lawful proceeding," this respondent says that by reference to said answer it will appear that the ad-

journment *sine die* of said Board is set up as a mere matter of fact and as a bar to further proceedings; that nothing is said in the answer about said adjournment being other than a necessity pursuant to law, which the Court had no power to avert; that no contempt was committed or intended by setting said fact out.

7. As to the matter charged as a contempt in paragraph six of the information, this respondent says he denies the fact alleged, and says that he did not ask for time for the purpose of delaying the proceedings of the Court; that he did not ask for time at all as a matter of fact; that the case was that a new suggestion for *mandamus* against the Board of Canvassers was filed and an order to show cause was about to be taken when the Court called the attention of this respondent to the fact and asked what time to answer would be necessary. This respondent did not, and neither did the Board of Canvassers, have any knowledge of this new suggestion till this presentation in Court. This respondent answered merely as a friend of the Court and not as attorney for the Board in the matter as to what would be *reasonable time* to answer. The Board then knew nothing of the matter. It was the last day on which the Board could sit by law, and the counsel for the relators were supposed to know it. If they did not, it was their misfortune and not the fault of this respondent. The Board was entitled to two days' notice to answer according to law and the custom and practice of this Court, and only that time was given.

9. As to the alleged contempt set out in the eighth paragraph of the information, "by deceiving the Court by the statement that in his opinion the Board had fully complied with the order of the Court in the *mandamus* case," this respondent says that he denies that he decieved the Court in the matter referred to at all. That he stated then, and states now, that in his judgment the Board of State Canvassers had anticipated in fact the peremptory *mandamus* and done all they could be required to do under the *mandamus;* that what they could do by order of the Court they could do without such order. That one of the Justices inquired specifically as to what the Board had done, and what their answer to the charge of contempt would be, and this respondent refused to answer orally, or answer further at all, unless time was given to prepare carefully the answer of the Board. The Court thereupon disregarded the application for further time to answer the rule to show cause upon

the Board why they should not be attached and punished for contempt without answer from them.

This respondent denies any purpose to deceive the Court, as the Court utterly disregarded his expressed "opinion," and proceeded as if no such opinion had been expressed. This was on November 24, 1876, two days after the Board of State Canvassers had adjourned *sine die*.

10. As to the alleged contempt set out in section eight of the information, this respondent denies that the matter and things alleged are true in the manner and form stated. That he denies every allegation of the section, except as hereinafter admitted. Protesting that he should not and could not be required to answer so indefinitely stated matter, yet, to avoid delay, this respondent says that he did not deceive the Court, and he did not make the statement "that the Board of State Canvassers were then employed in obeying the mandate of the Court and would require time to do so." This respondent supposes and believes that this allegation is founded on the remark made in Court upon the question of reasonable time to answer the new petition for *mandamus* against the Board of State Canvassers, filed November 22d, 1876, just after the Court delivered its opinion that morning awarding a peremptory *mandamus* as to a particular declaration of the election to the General Assembly by the Board of State Canvassers.

Upon the question of what would be reasonable time to answer, this respondent said casually that the Court had just imposed, by the opinion pronounced and order made thereon, considerable labor upon the Board of State Canvassers, and that fact should be taken into account in requiring them to make speedy answer in other and new matters.

The peremptory *mandamus* had not then been issued or served, and there was no order or mandate of the Court upon the Board of State Canvassers which they could be employed then in obeying. The allegation is a pure fabrication as thus shown, as is also the further statement that "he (this respondent) then knew that said Board had, under his (this respondent's) advice, determined not to obey the mandate of the Court, in this: that they did not propose to issue certificates to members elect to the General Assembly who had received the highest number of votes for their respective offices from the Counties of Edgefield and Laurens."

No such advice had been given by this respondent, and, by reference again to the facts within the knowledge of the Court, it will be seen no such advice could have been given. The Court had just pronounced its opinion and announced that an order for a peremptory *mandamus* would be signed. This respondent was *in Court* and had not seen the Board of State Canvassers to communicate the opinion and order of this Court just delivered and made, and hence could not have advised them "not to obey the mandate of this Court;" and this respondent says further, on information and belief, that when the Board of State Canvassers "refused to issue certificates" to members claiming to have been elected from Edgefield and Laurens, they did not in fact know that this Court had delivered any opinion or made any order in reference thereto; that they only learned that fact after they had adjourned *sine die* in the afternoon or evening of November 22d, 1876. They had no advice to disregard the mandate of this Court from this respondent on November 22d, 1876, and were totally ignorant of any mandate of this Court when they determined, as a Board of State Canvassers, the result of the election in the Counties of Edgefield and Laurens.

11. As to the alleged contempt in section nine of the information in "stating in open Court that if it was the purpose and desire of this Court to put the respondents in jail he would have nothing more to say;" "this in a rude and discourteous manner;"—this respondent says that he admits that he did make a remark substantially as charged, but he denies that he did it in a rude and discourteous manner or that he intended to be discourteous to the Court in making the remark.

The circumstances under which the remark was made were that this respondent had read an affidavit, made by all the members of the Board of State Canvassers, stating substantially that they had had but two hours in which to show cause why they should not be attached and punished for contempt of the mandate of this Court, and that they had no counsel who was able, from his other engagements, to prepare their answer, and, further, that they had not been served with a copy of the charges against them constituting the contempt; that they could make, they believed, a complete defense to the charges if time were given them, &c. The affidavit on file is referred to for greater particularity. On this affidavit further time to answer was prayed, and, upon this motion, a very warm discussion took place between counsel and a colloquy between

Justices of the Court and this respondent. This respondent be-lieved then, and believes now, if time had been given, a perfect defense could have been made by them (the Board of State Can-vassers) to the charge of contempt, and, therefore, urged with much warmth the motion for further time to answer. The motion was discussed severally by the Justices, while the respondent was on his feet and in the midst of his argument, and refused, or a refusal intimated, and, in the heat of the debate, he made, finally, the remark, or something like it, charged. But this respondent denies that he intended any disrespect to the Court, and says, further, that in any less heated debate he could not have made the remark at all, and that he now regrets it.

And this respondent says, finally, that he has not intended by any act done, advice given or word uttered in the conduct of this cause to treat with disrespect the orders or mandates of this Court, or to offer any indignity to the Court itself, or to defeat and render futile proceedings before it.

All of which is respectfully submitted.

*Conner*, attorney for relators.

*Corbin*, contra.

January 23, 1877. The opinion of the Court was delivered by

WRIGHT, A. J. Every material allegation in the "suggestion upon the record" in the above entitled case against David T. Cor-bin, an attorney and counselor at law of this Court, has been specially denied by his answer to the rule to show cause why he should not be attached and otherwise punished for contempt of this Court; and there being no action taken on such return by the counsel for the relators, the answer must be taken as true and the rule dismissed.

*Willard*, A. J., concurred.